IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. ROBERT WILLIAM RAINFORD, *Defendant*. | Case No. 22-CR-003-JFH |

### GOVERNMENT'S RESPONSE OPPOSING
### DEFENDANT'S OMNIBUS MOTION IN LIMINE (Doc. 101)

COMES NOW the United States of America, by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Kevin Gross, and respectfully submits this Response to Doc. 101.

On January 11, 2022, Defendant was indicted in the Eastern District of Oklahoma for: (1) Murder in Indian Country; (2) Use, Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence; and (3) Causing the Death of a Person in the Course of a Violation of Title 18, United States Code, Section 924(c). (Doc. 19).

The incident involves Defendant going to his neighbor's home on December 12, 2021 and shooting his neighbor 10 times with a pistol, killing his neighbor.

Defendant has raised an insanity defense. (Doc. 53). The Government also expects Defendant to assert that he was involuntarily intoxicated based on being prescribed an improper quantity of Adderall.

In reality, Defendant has a lengthy drug history and admitted using methamphetamine to an emergency room doctor on the day of the murder. Defendant also kept a journal in which he admitted taking more than the prescribed amount of Adderall just months before the murder.

1

Family members and a close acquaintance can also testify that Defendant regularly obtained drugs without a prescription, and habitually abused drugs.

Defendant's trial is currently scheduled to begin in April 2023. (Doc. 72). Earlier this month, the Government filed a notice and motion to introduce Fed. R. Evid. 404(b) evidence through cross-examination or in rebuttal. (Doc. 92).

Additional procedural history is extensively detailed elsewhere. (*See, e.g.,* Doc. 66).

### ARGUMENT & AUTHORITY

Defendant raises ten (10) motions in his Omnibus motion. (Doc. 101). Consistent themes throughout the motions are attempting to limit the Government's ability to prove that Defendant committed premeditated murder and attempting to preclude the Government from effectively responding to Defendant's insanity and involuntary intoxication defenses. Of course, Defendant does not control the Government's case or trial strategy and "unless prosecutors are allowed wide leeway in the scope of impeachment cross-examination [and rebuttal] some defendants would be able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." *Doyle v. Ohio*, 426 U.S. 610, 617 n.7 (1976) (citation omitted).

**I. Defendant's motion to exclude crime scene and victim photographs, body camera video of law enforcement responding and apprehending Defendant, and other analogous evidence should be denied.**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Exclusion of evidence under Rule 403 that is otherwise admissible . . . is an extraordinary remedy and should be used sparingly." *United States v. Oldman*, 979 F.3d 1234, 1250 (10th Cir. 2020) (quoting *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018)) (quotations and brackets omitted). "Evidence may be unfairly prejudicial if it has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* (quoting *United States v. Durham*, 902 F.3d 1180, 1224 (10th Cir. 2018) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997))) (quotations omitted).

"[G]ruesomeness alone does not make photographs inadmissible." *United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir. 1983). "Although the risk that introducing graphic evidence of brutal murders will give rise to emotional reactions poses a legitimate risk of unfair prejudice, . . . the vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts." *Oldman*, 979 F.3d at 1250 (quoting *United States v. Lujan*, 603 F.3d 850, 858 (10th Cir. 2010)) (quotations and brackets omitted) (ellipsis in original). Indeed, "courts have not allowed defendants to benefit from a Rule 403 exclusion for unfair prejudice simply because their conduct was of a grisly nature." *Lujan*, 683 F.3d at 858 (citing *United States v. Soundingsides*, 820 F.2d 1232, 1242-43 (10th Cir. 1987) ("upholding admission of 'undeniably gruesome' autopsy photographs that painted a clearer picture of the victim's injuries, cause of her death, and the defendant's malice aforethought")).

"It is well-settled that photographs showing the extent of injuries suffered by a crime victim are admissible because they give the jury a more complete understanding of events and can assist medical experts in their testimony." *United States v. Mills*, Record No. 95-1319, 1996 WL 167695, at *3 (10th Cir. 1996) (unpublished) (citing *Soundingsides*, 820 F.2d at 1243); *see also United*

3

*States v. Nelson*, 801 Fed. Appx. 652, 659 (10th Cir. 2020) (unpublished) (graphic photos of victim admissible to show injuries and Nelson's intent even where Nelson willing to stipulate to extent of injuries).

"Evidence is cumulative if its probative effect is already achieved by other evidence in the record; that is, if the small increment of probability it adds may not warrant time spent in introducing it." *United States v. Perrault*, 995 F.3d 748, 768 (10th Cir. 2021) (involving challenge to number of witnesses called under Fed. R. Evid. 414). Photographs that depict the body from different angles and vantage points are not cumulative. *See Soundingsides*, 820 F.2d at 1243 ("[n]or are they cumulative since, as the judge pointed out, they depict the body from different angles and vantage points than do the photos taken when investigators first discovered the body and thereby gave the jury a more complete understanding of the injuries").

Here, scene photographs are relevant and admissible. They depict the layout of the crime scene at the time of the offenses; show where the victim was shot and the manner in which he was killed; demonstrate Defendant acted with malice aforethought, premeditation, and a specific intent to kill; and refute Defendant's claims that he did not know the nature of what he was doing or that it was wrong. Autopsy photographs are also relevant and admissible for many of these reasons. Additionally, both sets of photographs will illustrate the testimony of multiple witnesses including eyewitnesses, law enforcement officers, and the forensic pathologist who determined the victim's cause of death. Defendant is not entitled to sanitize the Government's case because he chose to commit a grisly crime. *Lujan*, 683 F.3d at 858 (citing *Soundingsides*, 820 F.2d at 1242-43).

The Government anticipates introducing approximately 20 photographs from the autopsy, roughly one third of which are of projectiles and fragments recovered from the victim's body. Considering that the victim was shot 10 times, this is abundantly reasonable. The Government

does not anticipate introducing photographs of the victim's internal organs even though they are relevant to the victim's cause of death and the completeness of the forensic pathologist's exam.

Although Defendant contends that presenting numerous photos of the crime scene "will incite the jury and serves only an inflammatory purpose without providing any probative value," perhaps, this is because Defendant erroneously believes that "[t]he only issues before the jury in this case will be whether [Defendant] had the necessary *mens rea* to intentionally and with malice aforethought kill the decedent, and whether the defenses related to [Defendant's] mental condition apply." (Doc. 101 at 5-6).

In reality, the three offenses with which Defendant is charged do not contain a combined total of only two elements. There are really several issues for the jury to consider, including did Defendant kill the victim and did Defendant use a firearm to kill the victim. Additionally, the number of shots Defendant fired, the location of the shooting (the back of the victim's home), the number of times the victim was shot, and where on his body the victim was shot, are all relevant to deciding whether Defendant acted with premeditation and the specific intent to kill. Similarly, Defendant's behavior and statements during and after the shooting are relevant to determining Defendant's state of mind at the time of the shooting, including whether he understood the nature and wrongfulness of his actions.

Crime scene and autopsy photographs, body camera video of law enforcement responding and apprehending Defendant, and other analogous evidence are relevant and admissible on a number of grounds and their probative value is not substantially outweighed by any of the listed Rule 403 factors. Accordingly, Defendant's motion should be denied. To the extent the Court finds that some of this evidence may be cumulative, it should reserve ruling until trial. *See, e.g., United States v. Christie*, Record No. 07-0614 RB, 2009 WL 10706980, at *2 (D. NM 2009) ("[t]he

Court will review and admit or exclude the photographs on an individual basis at trial, limiting the introduction of those photos that are unduly prejudicial, cumulative, or having limited probative value") (unpublished) (citations omitted).[1]

> **II. Defendant's motion that lay and fact witnesses not opine about Defendant's mental state during and after the shooting should be denied.**

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge . . . ." Fed. R. Evid. 701.

"The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *James River Ins. Co. v. Rapid Funding*, LLC, 658 F.3d 1207, 1214 (10th Cir. 2011) (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng.*, 57 F.3d 1190, 1196 (3d Cir. 1995)).

Accordingly, witnesses who interacted with Defendant during and after the shooting may opine on Defendant's conduct and behavior. This includes testifying, *inter alia*, that Defendant was coherent, competent, responded to questions, understood where he was, and understood what was occurring.

---

[1] Defendant is handcuffed during part of the body camera video, but makes several statements while handcuffed that are recorded. These include statements about where the gun is located and a justification for why he killed the victim. The video is crucial to demonstrating that Defendant understood what he did and that it was wrong, and is admissible. *See, e.g., United States v. Padin*, 787 F.2d 1071, 1079 (6th Cir. 1986) ("the prosecutor is entitled to show the defendant's appearance when arrested"); *see also United States v. Mackey*, 249 Fed. Appx. 420, 428 (6th Cir. 2007) (unpublished) (no error in admitting photo of defendant in handcuffs that was admitted for particular purpose).

Importantly, Defendant erroneously implies that an expert may testify that Defendant had a certain mental state. (Doc. 101 at 7: "any opinion or testimony in which they [lay witnesses] assert that [Defendant] had a certain mental state . . . would be an inappropriate expert opinion by lay witnesses who are not qualified as expert witnesses and who do not have special knowledge regarding psychology or psychiatry"). In reality, "an expert witness **must not** state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or the defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b) (emphasis added). While Defendant may call expert witnesses during his case-in-chief, they, like lay witnesses, must not testify that Defendant had a certain mental state at the time of the offense.

### III. Defendant's motion to exclude Lisa Rainford's testimony should be denied.

As noted in the Government's Rule 404(b) motion, the Government may present evidence in cross-examination and rebuttal that Defendant regularly obtained drugs illegally. (Doc. 92). Defendant's ex-wife, Lisa Horn, would testify that Defendant was addicted to drugs throughout much of their 13-year relationship and was in rehab twice. The Government agrees with Defendant that she has no first-hand knowledge of the charged incident and, accordingly, does not expect to call her to testify about these things during the Government's case-in-chief. Only if Defendant asserts an insanity or involuntarily intoxication defense would this testimony become relevant. Lisa Horn can also testify about Defendant's long-term suspicious beliefs regarding their daughter, which are relevant in explaining Defendant's actions in killing the victim (who Defendant believed had done something to his daughter) and rebutting the anticipated assertion that Defendant only had such beliefs on the day of the murder. Accordingly, Defendant's motion should be denied.

**IV. Defendant's motion to exclude testimony about Defendant's drug history should be denied.**

As noted in the Government's Rule 404(b) motion, "[r]ebuttal evidence serves a legitimate purpose consistent with the exceptions listed in Rule 404. It allows a party to explain, repel, contradict or disprove an adversary's proof." *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (quotations and citation omitted). If Defendant presents evidence at trial that he was involuntarily intoxicated or experiencing a substance-induced psychotic disorder based on being improperly prescribed Adderall at the time of the offense, his complete drug history becomes relevant in rebuttal, including his written admission that he took more than the prescribed amount, testimony that he regularly obtained drugs illegally, and testimony that he used methamphetamine on the day of the murder. (Doc. 92 at 2).

Although Defendant implies that only those with "direct personal knowledge" may testify that he was using drugs at the time of the shooting, he appears to makes an exception for testimony that he was taking prescribed drugs in the amount prescribed. (Doc. 101 at 9: "None of her pretrial statements establish that she has direct personal knowledge that [Defendant] was using drugs, other than those prescribed to him in the amounts they were prescribed to him, at the time of the shooting"). Defendant cannot have it both ways.

As noted at the outset, Defendant cannot be allowed to "frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." *Doyle*, 426 U.S. at 617 n.7. Defendant, a long-term drug user and abuser, must not be allowed to falsely portray himself as someone unfamiliar with the effects of drugs and how to obtain them illegally.

**V. Defendant's motion to exclude any exhibits and witnesses not identified before the pre-trial conference should be denied.**

While Defendant correctly notes that the Government has not yet identified any trial

exhibits, (Doc. 101 at 11), Defendant fails to note that the Scheduling Order for this case requires exhibit lists to be exchanged on March 30, 2023, which is after the pre-trial conference. (Doc. 72 at 3). Accordingly, Defendant's motion should be denied.

### VI. Defendant's motion to exclude witnesses from testifying that Defendant displayed drug-seeking behavior should be denied.

Defendant erroneously contends that testimony from Defendant's prescribing doctor, Dr. Kirk, that Defendant was engaged in drug seeking behavior is an expert opinion. (Doc. 101 at 12-13). First, such testimony would be offered only in rebuttal, should Defendant present an involuntary intoxication or insanity defense. Second, this testimony would be rationally based on Dr. Kirk's perception and Defendant's statements, as Defendant requested that Dr. Kirk prescribe him more drugs than Dr. Kirk was willing to prescribe.

Such testimony goes to the heart of whether Defendant was involuntarily intoxicated or had an involuntarily substance-induced psychotic disorder, is rationally based on Dr. Kirk's perception, and helpful to determining a fact in issue, not based on scientific, technical, or other specialized knowledge, and is admissible under Rule 701. Dr. Kirk is also entitled to testify, *inter alia,* about his interactions with Defendant, statements Defendant made to him, and why he prescribed Defendant certain medication in certain dosages, *e.g.,* Defendant was a long-time drug user who had developed a tolerance. *See, e.g.,* Fed. R. Evid. 803(4) (statements made for medical diagnosis or treatment are admissible).

### VII. Defendant's motion to exclude testimony that he previously bragged about breaking a man's neck in Chicago should be denied as premature.

As noted *supra*, certain evidence will become relevant and admissible in rebuttal should Defendant present certain defenses. While the Government agrees that it has not provided notice under Rule 404(b) that it intends to introduce this evidence in rebuttal, Defendant is clearly aware

of it and the Court may permit the Government to introduce 404(b) evidence even when pretrial notice is not provided. Fed. R. Evid. 404(b)(3)(C). At present, the Government does not intend to introduce this evidence, but it could become admissible during the trial to show that Defendant understood the nature and wrongfulness of his actions. Accordingly, this motion should be denied as premature.

### VIII. Defendant's motion to exclude testimony that Defendant told his daughter that he would cover for her if she committed a crime should be denied.

Before committing the murder, Defendant told his daughter that he would not cover for her if she committed a crime. After the murder, and while incarcerated, Defendant told his daughter that he had changed his mind and would cover for her if she committed a crime.

This conversation is indicative of guilty knowledge and is relevant and admissible. Ultimately, it is the fact finder who "observe[s] the appearances and demeanor of the witnesses, appraise[s] their credibility, determine[s] the weight to be given their testimony, [draws] permissible inferences therefrom, [and] resolve[s] any conflicts in the evidence and reaches the ultimate conclusions of fact." *United States v. Leach*, 749 F.2d 592, 600 (10th Cir. 1984). Accordingly, Defendant's motion should be denied.

### IX. Defendant's motion to exclude evidence that Defendant admitted using methamphetamine shortly after the shooting should be denied.

Within hours of committing the murder, Defendant was taken to St. Francis Hospital in Muskogee. While at the hospital, Defendant admitted to Dr. Samuel Montgomery, an emergency room physician, that he took methamphetamine earlier in the day. Dr. Montgomery documented this in Defendant's medical file as "states he does have a prescription however did admit to using methamphetamine today." Defendant also tested positive for amphetamines at the hospital, consistent with having used methamphetamines (and also consistent with using Adderall, which is

10

an amphetamine), but the hospital did not run a separate methamphetamine drug screen. Dr. Montgomery indicated in medical records that Defendant not only admitted methamphetamine use, but also tested positive for methamphetamine.

Given Dr. Montgomery's practice and that Defendant's crime occurred more than a year ago, Dr. Montgomery does not specifically recall Defendant's statement. Nevertheless, he has told law enforcement that the medical records accurately reflect Defendant's admission of methamphetamine use.

Consistent with its attempts to sanitize the Government's case, Defendant now seeks to preclude the Government from introducing, perhaps, its most significant rebuttal evidence, which could, in and of itself, defeat Defendant's involuntary intoxication and insanity defenses. To do so, Defendant speculates that Dr. Montgomery conflated amphetamine and methamphetamine. (Doc. 101 at 15-16). Not only does this ignore Dr. Montgomery's contrary assertion, but it also assumes that Defendant told Dr. Montgomery that he had a prescription for amphetamine instead of Adderall. This is akin to someone taking heartburn medication telling a doctor that they have a prescription for esomeprazole instead of Nexium or someone taking allergy medication stating that they have a prescription for loratadine instead of Claritin. Additionally, Defendant's speculation assumes that there is no significance to Dr. Montgomery's record that Defendant "states he does have a prescription **however** did admit to using methamphetamine today." Indeed, Dr. Montgomery's use of the term "however" indicates that Defendant went outside the bounds of his prescribed medication.

Moving beyond Defendant's line of speculation, Defendant makes a number of erroneous legal arguments as to why Defendant's admission is inadmissible. First, Defendant suggests that Defendant's admission of methamphetamine use is Rule 404(b) evidence. (Doc. 101 at 14). In

11

reality, this evidence is intrinsic and Rule 404(b) does not apply. *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (Rule 404(b) does not apply to evidence intrinsic to the crime). While, generally, "intrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury," extrinsic evidence "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Id.* (quotations, citation, and brackets omitted).

Second, Defendant contends that Dr. Montgomery, the very doctor who wrote the medical records and to whom Defendant made the admission, lacks personal knowledge and so may not testify under Fed. R. Evid. 602. (Doc. 101 at 15). Because this is absurd on its face, Defendant indicates that a testifying witness must have "**current** personal knowledge," while also citing Rule 602's requirement of mere "personal knowledge" in a parenthetical. (Doc. 101 at 15). Caselaw contradicts Defendant's position.

The Tenth Circuit has held that "[a] court should exclude testimony for lack of personal knowledge only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014) (quotations and citations omitted in part) (citing 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6022 (2d ed. 2007)) ("'[T]he testimony is excluded only if, as a matter of law, no juror could reasonably conclude that the witness perceived the facts to which she testifies'"). Only if "the witness merely has personal knowledge of an out-of-court statement offered to prove the fact asserted in that statement—but not the underlying fact—[must] his or her testimony . . . comply with the hearsay rule." *Id.* (citation omitted). Of course, while Dr. Montgomery may not have personally seen Defendant ingest methamphetamine, Defendant admitted his use to Dr. Montgomery. And an opposing

12

party's statement that is offered against the party is not hearsay. *See* Fed. R. Evid. 801(d)(2)(A).

Third, Defendant contends that Dr. Montgomery's memory cannot be refreshed with the medical records and that the information in the medical records are not a recorded recollection. (Doc. 101 at 15). The Government disputes that it cannot use the medical records to refresh Dr. Montgomery's memory at trial, to the extent necessary, under Fed. R. Evid. 612. Assuming *arguendo* that it cannot, the records fall under Rule 803(5)'s past recorded recollection hearsay exception. This rule requires that the record: "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Such is the case with the medical records here and they are admissible under this hearsay exception.

Finally, Defendant contends that the medical records are also inadmissible under the business records exception to the hearsay rule. (Doc. 101 at 16). If the Court rules that Defendant's admission of methamphetamine use is inadmissible under the past recorded recollection hearsay exception because the recorded recollection does not accurately reflect Dr. Montgomery's knowledge then the medical records will also be inadmissible under Rule 803(6), the business records exception. Nevertheless, since Dr. Montgomery has indicated that the record of Defendant's admission of methamphetamine use is accurate, Defendant's argument fails and the records are also admissible under this hearsay exception.

This Court should deny Defendant's motion to exclude his admission of methamphetamine use on the day of the murder.

**X. Defendant's motion to exclude Defendant's statements regarding counsel should be denied in part.**

After killing the victim, Defendant was interviewed by the FBI. Questioning ended after

13

approximately 50 minutes to an hour when Defendant invoked his right to counsel. Earlier in the interview, Defendant mentioned the possibility of getting a lawyer, but did not unambiguously invoke his right to counsel.

The Government concedes that Defendant's actual invocation of his right to counsel is inadmissible, but the earlier ambiguous statements are admissible.

In *Doyle v. Ohio*, the Supreme Court held that using a defendant's post-arrest and post-*Miranda* warnings silence for impeachment purposes violates the Due Process Clause. 426 U.S. 610, 619 (1976). And "[i]t is equally unfair to breach that promise by using [post-arrest, post-*Miranda* warnings] silence to overcome a defendant's plea of insanity." *Wainwright v. Greenfield*, 474 U.S. 284, 292, 295 (1986). This is because a *Miranda* warning contains the implicit promise "that silence will carry no penalty." *Id.* at 290 (quotations and footnote omitted).

Furthermore, "[w]ith respect to post-*Miranda* warnings 'silence,' . . . silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted. *Id.* at 295 n.13.

Accordingly, the Government agrees that Defendant's unambiguous invocation of his right to counsel at approximately 50 minutes to an hour after questioning started cannot be used to impeach his insanity or involuntarily intoxication defenses.

But, Defendant's earlier, ambiguous statements about counsel, which were insufficient to end questioning, can be used against him. *Davis v. United States*, 512 U.S. 452, 459 (1994) ("the suspect must unambiguously request counsel" and failure to do so permits law enforcement officers to continue questioning); *cf. Wainwright*, 474 U.S. at 297 (Rehnquist, J., concurring) ("a request for a lawyer may be highly relevant where the plea is based on insanity").

Accordingly, this Court should deny Defendant's motion in part.

**CONCLUSION**

The Government respectfully requests that the Court deny the first nine motions in Defendant's Omnibus Motion and deny in part the tenth motion.

                Respectfully submitted,

                CHRISTOPHER J. WILSON
                United States Attorney

s/  Kevin Gross
    KEVIN GROSS, VA Bar # 72990
    Assistant United States Attorney
    Attorney for the Plaintiff
    520 Denison Avenue
    Muskogee, OK 74401
    (918) 684-5100
    Fax (918) 684-5150

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

 Darren Robinson, Attorney for Defendant
 Daniel Rubin, Attorney for Defendant

s/  Kevin Gross
    KEVIN GROSS
    Assistant United States Attorney